**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JOSEPH CONLEY, #B-17249,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 11-cv-0013-MJR** |
| | ) | |
| **MICHAEL RANDLE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### INTRODUCTION

Joseph Conley ("Plaintiff"), an inmate in Sheridan Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on events that occurred while he was housed at Vienna Correctional Center. Plaintiff is serving a six year sentence for burglary. This case comes now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In making this assessment, the Court is obligated to accept factual allegations as true, but some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.   However, the factual allegations of a pro se complaint must be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In the case at bar, upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A.  Portions of this action are subject to summary dismissal.

### THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Liberally construed, the complaint alleges the following.  On December 22, 2009, Plaintiff was assaulted by another inmate, who swung a bag containing a metal combination lock toward Plaintiff's head.  Plaintiff's right hand was struck by the lock as he blocked the blow.  The impact broke Plaintiff's hand.  Plaintiff's ensuing attempts to obtain medical care form the basis for his complaint.

In the caption of Plaintiff's complaint, he names only the Illinois Department of

Corrections ("IDOC"), former IDOC Director Michael Randle, and Vienna Correctional Center Warden John Cox as Defendants. However, Plaintiff identifies several other Defendants in the body of his complaint, and it appears he intended to sue those individuals as well. In keeping with the duty to liberally construe the *pro se* complaint, the Court will analyze the claims against all the Defendants named by Plaintiff.

Plaintiff was housed in segregation during the events giving rise to his claims. After the December 22, 2009, assault by the other inmate, Plaintiff asked John Doe #1, a correctional officer, to allow him to go to the Health Care Unit for medical attention. This request was denied. At the 8:00pm medication line on the same day, Plaintiff showed his injured hand to J. Daymon (a nurse) and asked for pain medication and to see a doctor, telling the nurse he thought the hand was broken. Nurse Daymon told Plaintiff to sign up for sick call. She did not allow Plaintiff to see a doctor or give him any pain medication.

The next morning, December 23, 2009, Plaintiff saw Nurse Stanford on the 8:00am medication line. Plaintiff again requested to see a doctor and told Stanford he was in excruciating pain due to the hand probably being broken. Stanford told Plaintiff she would call him back down after the medication line was over, but she never called Plaintiff down nor gave him any pain medication. That evening, Plaintiff renewed his request to see a doctor and get pain medication to Nurse Stauless during the medication line. Stauless said she would call Plaintiff back down after she finished passing out medication but never did so.

By the following morning, December 24, 2009, Plaintiff's hand was swollen "like a boxing glove" and all his fingers were discolored (Doc. 1, p. 5). Nurse Stanford was back on the medication line, and Plaintiff asked her to get him to the doctor and give him pain medication.

Defendant Stanford told Plaintiff to sign up for sick call, to which Plaintiff responded that he could not use his hand (apparently meaning he was unable to write a sick call request). Stanford told Plaintiff he would be called back down, but again, he was not called. That evening, Plaintiff repeated his request for medication and a doctor visit to Nurse Jane/John Doe #2. Again, Plaintiff was told he would be called back down, but nothing was done and he continued to suffer without any pain medication.

Later in the evening of December 24, at 8:45pm, Plaintiff notified a Lieutenant[1] that he needed medical attention, and this Lieutenant finally took Plaintiff to the Health Care Unit. Nurse Tracy Potts examined Plaintiff and telephoned Dr. Kim Birch to report the suspected fracture. Dr. Birch did not order an x-ray or any pain medication. Nurse Potts then reported to Plaintiff that all he could do was give Plaintiff ibuprofen and ice, and that Dr. Birch would not be back until after the holiday.

Dr. Birch did not examine Plaintiff's hand until December 29, 2009, one week after the injury. At that time, she ordered an x-ray, Motrin, and ice for Plaintiff, and she scheduled a follow-up visit in a week. However, the x-ray was never done, and no follow-up treatment was given by Dr. Birch.

Plaintiff alleges that Wexford Health Sources, Inc. ("Wexford"), and the Illinois Department of Corrections have a policy or practice that inmates from Vienna Correctional Center are only sent for x-rays on Wednesdays, when they are transported to the nearby Shawnee Correctional Center. Plaintiff claims that he should have been taken for the x-ray on Wednesday,

---

[1] It does not appear from the complaint that Plaintiff intended to name this Lieutenant, or Nurse Tracy Potts, as Defendants.

December 30th, the day after he saw Dr. Birch.  However, either Nurse Stanford or  Nurse Jane/John Doe #3 failed to arrange for Plaintiff to have the x-ray on that day.  Plaintiff complained about the delay in the x-ray to all the nurses who visited the segregation area, to no avail.  He continued to suffer "excruciating" pain (Doc. 1, p. 7).

Plaintiff's follow-up doctor visit on January 5, 2010 was cancelled by J. Brown (a nurse), allegedly because of Wexford's policy of sending inmates for x-rays only once per week.  Plaintiff saw Dr. Birch the next day in the segregation unit and asked her when he would get his x-ray.  A lieutenant told Plaintiff that the van had already left for Shawnee Correctional Center.  Dr. Birch re-ordered the x-ray.  However, Plaintiff was never taken for the x-ray because he was transferred to Big Muddy Correctional Center on January 13, 2010.  Ultimately, Plaintiff received treatment for his broken right hand at that institution.  Plaintiff alleges he suffered permanent damage to the hand, as well as constant pain and swelling, because of the delay in care caused by the various Defendants.

## ANALYSIS

### Deliberate Indifference to Serious Medical Needs – Overview

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.  In addition, a delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or

unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)

(discussing *Estelle,* 429 U.S. at 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010);

*Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care

does not automatically defeat a claim of deliberate indifference if a fact finder could infer the

treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously

aggravate' a medical condition")).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this

test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . .  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit considers the following to be indications of  a serious medical

need: (1) where failure to treat the condition could "result in further significant injury or the

unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or

patient would find important and worthy of comment or treatment;" (3) "presence of a medical

condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

In the case at bar, Plaintiff has described a condition that meets several of the criteria described in *Gutierrez.* While initially, the seriousness of his injury may not have been obvious to a lay person, it certainly became so as the swelling and discoloration increased. Plaintiff also alleges he was in continuing and substantial pain from the hand injury; the condition significantly affected his daily activities in that he was unable to use his right hand; and the injury caused him substantial and ongoing pain. These allegations suffice to meet the objective showing that Plaintiff had a serious medical condition. The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants.

To show deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837. The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th

Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)). The undersigned Judge now applies these standards to the allegations against the Defendants identified in Plaintiff's complaint.

### A.    Defendant Officer John Doe #1

Soon after Plaintiff's hand was injured, Officer John Doe #1 refused Plaintiff's request to see a doctor. Plaintiff does not allege that he showed any obvious sign of injury at that time, and Officer John Doe #1 is a lay person, not a medical provider. The complaint does not establish that Plaintiff's medical condition would necessarily have appeared objectively serious to a lay person immediately after the injury. Therefore, Plaintiff has not stated a claim for deliberate indifference against Officer John Doe #1, and he shall be dismissed from this action without prejudice.

### B.    Defendants Daymon, Stanford, Stauless, and Nurse Jane/John Doe #2

Each of these Defendant nurses in turn, after Plaintiff explained that he believed his hand was broken and he was in severe pain, refused or failed to call Plaintiff to the Health Care Unit to see a doctor. Each of these nurses denied Plaintiff's request for pain medication. As a result, Plaintiff suffered from a painful injury without any medication for at least 48 hours, and he lost the opportunity to see the doctor (Defendant Birch) before she became unavailable over the Christmas holiday period. In addition, Plaintiff alleges that Nurse Stanford may have been responsible for failing to schedule him for an x-ray on December 30 (see Part E. below).

At this point in the litigation, it is not possible to determine whether these

Defendants' refusal to give Plaintiff any pain medication, their failure to respond to Plaintiff's requests to see a doctor, and Defendant Stanford's failure to arrange for the physician-ordered x-ray rose to the level of deliberate indifference to a serious medical need, or whether they were merely negligent. Accordingly, dismissal of the claims against Defendants Daymon, Stanford, Stauless, and Nurse Jane/John Doe #2 is not appropriate at this time.

### C.   Defendant Birch

When Nurse Potts[2] contacted Defendant Dr. Birch about the suspected fracture in Plaintiff's hand, Defendant Birch did not initially order an x-ray, nor did she prescribe any pain medication. At that time, Plaintiff's hand was severely swollen and discolored. While Nurse Potts did offer Plaintiff Ibuprofen and ice, Plaintiff alleges that he continued to suffer severe pain because of Defendant Birch's failure to authorize further treatment. Plaintiff also claims that Defendant Birch delayed examining him for five days for no valid medical reason, but instead allowed him to continue to suffer while she took time off for the holidays.

Whether or not Defendant Birch's failure to provide prompt treatment contributed to prolonging Plaintiff's pain or worsening the condition of his broken hand cannot be determined at this stage. The claim against Defendant Birch is not subject to dismissal at this time.

### D.   Defendant Wexford Health Sources

Plaintiff alleges that the failure to obtain a timely x-ray of his hand, and the consequential further delay in his treatment, was a result of the policy and practice of Defendant Wexford that inmates would only be sent for x-rays one day per week. Wexford Health Sources is

---

[2] As noted earlier, it does not appear that Plaintiff intended to name Nurse Potts as a Defendant. In any event, there are no allegations that he was deliberately indifferent to Plaintiff's medical needs; on the contrary, he appears to have provided Plaintiff with all the treatment he was authorized to dispense.

a corporation that employs the Defendant nurses and doctor and provides medical care at the prison on a contractual basis. If Plaintiff's allegation that Wexford's policy created conditions that infringed upon his constitutional rights proves to be true, Plaintiff may be able to establish deliberate indifference on the part of Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Accordingly, the claim against Defendant Wexford Health Sources will not be dismissed at this point in the litigation.

### E.      Defendants Jane/John Doe #3 and J. Brown

Plaintiff alleges that either Nurse Jane/John Doe #3 or Nurse Stanford (see Part B, above) was at fault for failing to arrange for him to be x-rayed on December 30, the day after he saw Dr. Birch. Coupled with the alleged policy of Defendant Wexford limiting x-rays to Wednesdays only, this resulted in Plaintiff's x-ray being delayed for over two weeks after it was finally ordered by Dr. Birch. At this point, it cannot be determined whether the delay was due to negligence or deliberate indifference. Therefore, the claim against Defendant Jane/John Doe #3 and this additional claim against Defendant Stanford are not subject to dismissal.

Defendant Brown failed to take Plaintiff to his scheduled January 5, 2010, visit with Dr. Birch. It is not clear whether Plaintiff is alleging that Brown cancelled this visit because the x-ray had not yet been done (which Plaintiff claims was a direct result of Wexford's policy limiting x-rays) or that Brown deliberately cancelled the appointment for some other reason (Doc. 1, p. 7). Either way, Plaintiff's follow-up treatment was again delayed. Again, it cannot be determined at this

stage whether Defendant Brown's actions were mere negligence or constituted deliberate indifference, thus this claim is not subject to dismissal.

### F.      Defendants Randle and Illinois Department of Corrections

Plaintiff asserts claims against all the Defendants in both their official and individual capacities.  However, the Eleventh Amendment bars both the claim against former IDOC Director Randle in his official capacity and the claim against the Illinois Department of Corrections.  A claim against the director of a state agency amounts to a suit against the entity of which the officer is an agent.  *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *Owen v. Lash,* 682 F.2d 648, 654 (7th Cir. 1982).  A suit against a state agency, such as the Illinois Department of Corrections, is prohibited because a § 1983 claim cannot be brought against a State.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").  *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against States in federal court for money damages); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (State Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Toledo, Peoria, & W.R. Co. v. Illinois*, 744 F.2d 1296, 1298-99 (7th Cir. 1984).

To maintain a claim against Defendant Randle in his individual capacity, Plaintiff must allege facts to show that Randle personally caused a deprivation of Plaintiff's constitutional rights.  *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).  Plaintiff has made no such allegation, stating only that Randle "was legally responsible for the operation of the Illinois Department of Corrections" (Doc. 1, p. 1).  Plaintiff has failed to state a claim against Defendant Randle in his individual capacity, and the Eleventh Amendment bars the official capacity claim

against Defendant Randle as well as the claim against Defendant IDOC.  Accordingly, both of these Defendants must be dismissed with prejudice.

### G.    Defendant Cox

Plaintiff also has failed to state a claim against Defendant Cox, the prison warden, for deliberate indifference to medical needs, as Plaintiff has alleged no direct role by Cox in the provision of medical care to Plaintiff.  Moreover, Cox cannot be held liable by virtue of his position as the warden for deprivations of Plaintiff's constitutional rights caused by other prison employees, because there is no supervisory liability in a § 1983 action.  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions).  Plaintiff makes no allegations against Defendant Cox other than claiming he was "legally responsible for the operation of Vienna Correctional Center" (Doc. 1, p. 2).  The claim against Defendant Cox must be dismissed with prejudice.

### PENDING MOTION

Plaintiff has moved for the appointment of counsel for the third time (Doc. 11).  His earlier motions were denied, because Plaintiff had not made a reasonable attempt to obtain counsel or show that he was precluded from doing so (Docs. 7 and 10).  Along with his newest motion, Plaintiff attaches two letters from the law firm of Winston and Strawn, both declining representation, and a letter from the American Civil Liberties Union also rejecting his application for assistance.

There is no constitutional or statutory right to appointment of counsel in a civil case.  But federal district courts enjoy discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants.  *Romanelli v. Suliene*,  615 F.3d 847, 851-52 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  When presented with a request to appoint counsel, this Court

must consider the following issues: "(1) has the . . . plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself."  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

As to the first step of the *Pruitt* analysis, Plaintiff has made some unsuccessful efforts to obtain legal representation, which may be considered a "reasonable attempt."  As to the second step of the *Pruitt* inquiry, the early stages of this litigation (i.e., the fact no answers or defense motions are on file) renders it difficult for the undersigned to assess the complexity of this case and Plaintiff's ability to litigate it.  *See Romanelli*, 615 F.3d at 852.  Therefore, Plaintiff's motion for appointment of counsel (Doc. 11) is **DENIED**, without prejudice to Plaintiff later re-filing his motion.

### DISPOSITION

The Court **CONCLUDES** that Plaintiff has failed to state a claim upon which relief may be granted against Defendants **ILLINOIS DEPARTMENT of CORRECTIONS, RANDLE,** and **COX**.  The Court **DISMISSES** these Defendants from the action *with* prejudice.  Likewise, Plaintiff has failed to state a claim against **OFFICER JOHN DOE #1.**  He is **DISMISSED** from the action *without* prejudice.

As to Plaintiff's surviving claims, the Court **ORDERS** as follows.  The Clerk of Court **SHALL ADD THE FOLLOWING PARTIES AS DEFENDANTS:**  (1) Dr. Kim Birch, (2) Nurse J. Brown, (3) Nurse J. Daymon, (4) Nurse Jane/John Doe #2, (5) Nurse Jane/John Doe #3, (6) Nurse Stanford, (7) Nurse Stauless, and (8) Wexford Health Sources, Inc.

The Clerk of Court shall prepare for Defendants **BIRCH, BROWN, DAYMON,**

**STANFORD, STAULESS,** and **WEXFORD HEALTH SOURCES, INC.** (A) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (B) Form 6 (Waiver of Service of Summons). The Clerk shall mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the **JANE/JOHN DOE DEFENDANTS** until Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on

Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **HEREBY ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings. This entire case shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: September 13, 2011

  */s/ Michael J. Reagan*_____
Michael J. Reagan
United States District Judge