IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH CONLEY, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 11−cv−0013−MJR−SCW |
| | ) |
| DR. KIM BIRCH, | ) |
| NURSE J. BROWN, | ) |
| NURSE J. DAYMON, | ) |
| NURSE STANFORD, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| CAROL FAULESS, and | ) |
| PENNY GEORGE, | ) |
| | ) |
|        Defendants. | ) |

## REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

       This § 1983 case, in which *pro se* Plaintiff Joseph Conley has alleged the defendants acted with deliberate indifference toward his injured hand, is before the Court on Defendant Wexford Health Sources, Inc.'s (Wexford's) Motion for Summary Judgment (Doc. 48). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Conley exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that Wexford's motion (Doc. 48) be **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

       On January 1, 2011, Joseph Conley, then an inmate at Sheridan Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. Conley, whose allegations stem from an incident that happened during his incarceration at the Illinois Department of Corrections'

1

(IDOC's) Vienna Correctional Center, named two defendants (the IDOC Director and the Warden of Vienna Correctional Center) in his Complaint (Doc. 1). According to the Complaint, another inmate broke Conley's hand with a metal combination lock, and Conley's subsequent attempts to get treatment for his hand were met with deliberate indifference on the part of the defendants. Conley suffered the injury on December 22, 2009, received an X-ray on January 15, 2010 (after he had been transferred from Vienna), and was placed in a cast on January 26.

Pursuant to 28 U.S.C. § 1915A, District Judge Reagan performed a preliminary review of Conley's claims in September 2011. (Doc. 12). In keeping with the duty to construe *pro se* complaints liberally, District Judge Reagan added several Defendants whom it appeared Conley intended to sue. (*Id.*). Those new Defendants included seven individuals and Wexford Health Sources, the contractor for health services at Vienna. Conley, as his Complaint was construed in the threshold order, claims Wexford has a policy or practice that restricts the scheduling of inmate X-rays, thus delaying his treatment and prolonging his pain.

Wexford filed the instant motion on January 9, 2012. Wexford argues that Conley failed to exhaust his administrative remedies because he never named Wexford in any of his grievances. The motion ripened on January 31, 2012, when Conley filed his response brief. Having thoroughly reviewed the entire record, the undersigned **RECOMMENDS** as follows.

### CONLEY'S GRIEVANCES

According to undisputed records kept by the IDOC's Administrative Review Board (ARB), Plaintiff Conley filed four grievances pertaining to his medical treatment (or lack thereof) subsequent to December 22, 2009. The first, dated February 16, 2010 and sent directly to the ARB, was a page long and returned to Conley (who was then at Big Muddy Correctional Center) with instructions to "provide date(s) of incident(s) and also dates when you requested medical assistance

2

but were denied." (Doc. 49-1, p. 4). The ARB indicated "this office needs more specifics in order to research your claims." (*Id.*).

Conley's followup, which he also filed directly to the ARB, included more information.[1] On June 17, 2010 (though it was written as an amendment to the February grievance and dated 2-16-2010), Conley submitted a nine-page form in which he complained about his medical care. Among other things, Conley grieved that, on December 24, he saw a nurse who called Defendant Birch because Conley's hand injury was so serious. (Doc. 49-1, pp. 14–15). After talking to Birch, the nurse told Conley "there was nothing he could do because of the holidays" and that Conley would have to wait until December 29 (when Birch returned) to possibly be referred for an X-ray. According to the grievance, Conley was scheduled to see Birch on January 5, but that appointment was cancelled, and by the time he saw Birch on January 6, she indicated she would schedule X-rays for January 13 — a full 22 days after Conley's hand was broken. The ARB responded on June 25, 2010: "it is the opinion of this office that the issue was appropriately addressed by the institutional administration." (Doc. 49-1, p. 7).

Conley's third and fourth grievances are dated June 27, 2010, and March 27, 2011. (Doc. 49-1, p. 24 and Doc. 49-1, p. 23). It appears the third and fourth grievances were each processed by institutional officers (at Big Muddy River and Sheridan Correctional Centers, respectively), but appealed together in June 2011. In those grievances, Conley, who was having trouble scaling his upper bunk, asked for a low bunk permit and "something for the pain" in his hand. (Doc 49-1, pp. 23–25). He also indicated that, although he had put in request slips, officials at Big Muddy River and Sheridan had not answered them. (Doc. 49-1, p. 25). The ARB rejected the two grievances together, indicating Conley had no further redress because they were "not submitted in the timeframe outlined" by IDOC rules. (Doc. 49-1, p. 21).

---

[1] IDOC rules require an inmate to submit a grievance directly to the ARB when grieving issues pertaining to a facility other than the one where he resides. **20 Ill. Admin. Code § 504.870(a)(4)**.

**LEGAL STANDARDS**

1. *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[2] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving

---

[2] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

4

party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). *Accord Anderson*, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).** The Court considers the facts in a light most favorable to the non-movant — here, Conley. **Srail v. Vill. of Lisle, 588 F.3d 940, 948 (7th Cir. 2009).**

### 2. PLRA's Exhaustion Requirement

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. **42 U.S.C. § 1997e(a).** [3] Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where

---

[3] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).**

5

prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.** When — as here — purely legal issues control the administrative remedies issue, no hearing is needed. **Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. **Id.** But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

3. ***Exhaustion Requirement under Illinois Law***

As an inmate confined within the Illinois Department of Corrections, Conley was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin.**

6

**Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. **Id**. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

**CONCLUSIONS OF LAW**

Two sets of Conley's grievances need addressing. First, the Court looks to the grievances dated February 16 and June 17, 2010, which were filed directly to the ARB. The Court will then turn to the grievances filed on June 27, 2010 and March 27, 2011, which did not pertain to Conley's time at Vienna Correctional Center.

1. **Grievance dated February 16, 2010**

When prison officials deny a grievance based solely on a procedural shortcoming, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).** But when prison officials have been afforded an opportunity to address an inmate's claims internally, prior to federal litigation, the purpose of exhaustion has been met and the prisoner has properly exhausted his available remedies. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** Though his February 16 grievance was insufficient to exhaust his administrative remedies, Conley managed to exhaust via his June 17 grievance by providing enough information to the ARB to invite corrective action regarding Wexford's policies.

As required by the Illinois Administrative Code, Conley — who was no longer incarcerated at Vienna — filed his first grievance regarding his lack of treatment at Vienna directly to the ARB. **See 20 Ill. Admin. Code § 504.870(a)(4).** That first grievance, dated February 16, 2010, describes the attack on Conley and broadly complains about his subsequent medical care at Vienna. "On the date I was assaulted by an inmate who hit me in the right hand with a combination lock that was in a laundry bag, after the altercation I requested medical assistance for my hand and never received it until I was sent to Big Muddy River CC . . . I was also requesting X-rays for my hand and I never received that either until I went to Big Muddy River CC." (Doc. 49-1, p. 5). The ARB sent Conley's grievance back, noting it needed the dates of Conley's underlying injury and of his subsequent requests for medical care. (Doc. 49-1, p. 4). Because IDOC grievance procedures

8

require a prisoner to include "what happened, *when*, where, and the name of each person" targeted by a grievance, Conley's grievance — which did indicate when he was injured or sought treatment — was deficient. **20 Ill. Admin. Code § 504.810(b) (emphasis added).** The ARB relied on that shortcoming, so Conley failed to exhaust when he filed his February grievance. **Maddox, 655 F.3d at 722.**

### 2. Grievance Received June 17, 2010

Regarding Conley's June 17 grievance, Wexford's argument boils down to this: "Plaintiff did not mention Wexford, describe Wexford, or even state actions that were or were not taken by Wexford or grieve Wexford's policies and procedures." (Doc. 49, p. 6). But that is not the standard for exhaustion. An inmate must simply do enough to give "prison officials a fair opportunity to address his complaint." **Maddox, 655 F.3d at 722.** Caselaw does not require perfect congruence between a grievance and a pled complaint, just that prison officials are alerted to a perceived problem and invited to take corrective action. **Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005). See also Jones v. Bock, 549 U.S. 199, 219 (2007) (providing early notice to those who might later be sued is not one of the leading purposes of the PLRA's exhaustion requirement).** Illinois grievance procedures require an inmate to include "the name of each person" targeted by a grievance, or alternatively to "include as much descriptive information about the individual as possible."[4] **20 Ill. Admin. Code §504.810(b).** Courts construe the contents of an inmate's grievance generously. **Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004).**

Here, in response to the ARB's request for more information, Conley submitted a nine-page form that outlined delays in Conley's treatment at the direction of Defendant Birch.

---

[4] Illinois' grievance procedures seem only to contemplate grievances made against individual officials, not corporations or other organizations. Here, the Court analyzes Conley's grievance under the rubric of the PLRA's purpose of inviting corrective action via a grievance. But a stricter reading of the Illinois Administrative Code may lead to the conclusion that, because prisoners are not invited to grieve against corporations (against whom they can clearly file suit, *see Woodward v. Corr. Med. Servs. of Ill.*, 368 F.3d 917, 927 (7th Cir. 2004)), administrative exhaustion as to corporations is unavailable and thus, litigation can proceed.

Conley grieved that, on December 24, he saw a nurse who called Birch because Conley's hand injury was so serious. (Doc. 49-1, pp. 14–15). After talking to Birch, the nurse told Conley "there was nothing he could do because of the holidays," and that Conley would have to wait until December 29 — when Birch returned — to possibly be referred for an X-ray. According to the grievance, by the time Conley saw Birch on January 6, she indicated she would schedule X-rays for January 13, a full 22 days after Conley's hand was broken. Construing the grievance generously, prison administrators were invited to examine how the policies of Wexford — the prison's corporate healthcare contractor whose policies were undoubtedly enmeshed with scheduling doctor availability or postponing medical procedures — bore on Conley's alleged lack of treatment. **See Maddox, 655 F.3d at 722 ("[I]t belies reason to suggest that prison administrators . . . were unaware of who was responsible for" administrative decisions)**; **Riccardo, 375 F.3d at 524 ("A generous construction of [a] grievance would have induced the prison to consider the possibility").** Holding otherwise would be an odd result: a corporate defendant (who presumably works with the prison officials in charge of reviewing grievances) could avoid liability because a prisoner (whose interaction with the prison health system is limited to doctors and nurses, whom he may not even know work on a contract basis) would be required to grieve corporate policies. In short, Conley gave the ARB enough information to examine Wexford's policies as they pertained to the scheduling of his X-rays. He therefore exhausted his administrative remedies.

### 3. *Grievances from June 27, 2010, and March 27, 2011*

Conley filed other grievances to prison officials where he was incarcerated. Those grievances, dated June 27, 2010 and March 27, 2011, are insufficient to have exhausted Conley's remedies because they have nothing to do with the allegations Conley has brought in this case. And even if they had, the ARB properly denied the two grievances as untimely appealed.

Conley's second set of grievances contains no mention of any denied medical requests while he was incarcerated at Vienna. As such, those grievances offered IDOC officials no opportunity to address Conley's instant claims internally, and cannot suffice to exhaust his administrative remedies here. **Kaba, 458 F.3d at 684. See also 20 Ill. Admin. Code § 504.810(b) (grievance must "contain factual details regarding each aspect of the offender's complaint").** Defendant's argument therefore prevails: the contents of Conley's June 27, 2010 and March 27, 2011 grievances were insufficient to exhaust Conley's administrative remedies.

The Court notes that, even if those grievances comported substantively with grievance requirements, both were appealed in June 2011, well over thirty days after April 8, 2011 (when Conley's March 2011 grievance was returned to him). The ARB properly rejected that appeal solely on the basis of its untimeliness. **See 20 Ill. Admin. Code § 504.850(a) (prisoner has thirty days to appeal a warden's decision).** Conley cannot, therefore, pursue federal litigation against Defendants based on the second set of grievances. **See Perez v. Wis. Dep't of Corr., 182 F.3d 532, 536 (7th Cir. 1999) (PLRA "gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which courts must respect") (emphasis in original).**

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant Wexford Health Sources, Inc.'s Motion for Summary Judgment (Doc. 48) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. **See, e.g., Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004). Objections to this Report and Recommendation must be filed on or before August**

11

**17, 2012**.  *See* **FED. R. CIV. P. 6(d); SDIL-LR 5.1(c)**.  If the District Court accepts this Report and Recommendation, all Defendants will remain in the case.

**IT IS SO RECOMMENDED.**
**DATE: July 31, 2012**                     **/s/ *Stephen C. Williams***
                                            **STEPHEN C. WILLIAMS**
                                            United States Magistrate Judge