IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH CONLEY,                          )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )        Case No. 11-cv-0013-MJR-SCW
                                        )
DR. KIM BIRCH,                          )
NURSE J. BROWN,                         )
NURSE J. DAYMON,                        )
NURSE STANFORD,                         )
WEXFORD HEALTH SOURCES, INC.,           )
CAROLE FAULESS, and                     )
PENNY GEORGE,                           )
                                        )
                    Defendants.         )

## MEMORANDUM AND ORDER

REAGAN, District Judge:

A.    **INTRODUCTION**

In January 2011, Joseph Conley (then confined at Sheridan Correctional Center) filed suit in this Court under 42 U.S.C. 1983, alleging deprivation of rights secured to him by the United States Constitution.  The complaint alleged that while Conley was incarcerated at the Illinois Department of Corrections (IDOC) facility in Vienna, Illinois, Defendants were deliberately indifferent to Conley's serious medical needs.  More specifically, Conley alleged that Defendants delayed his access to an x-ray and otherwise stalled in treating him, after he injured his hand in an altercation with another inmate at Vienna Correctional Center in December 2009.

The complaint (filed January 7, 2011) named two Defendants -- the Warden of Vienna Correctional Center and the Director of the IDOC. A third Defendant (the IDOC) was listed in the caption. On threshold review under 28 U.S.C. 1915A, the undersigned Judge dismissed the named Defendants but *added* (and ordered service on) others mentioned in the body of the complaint, construing them as the Defendants whom Conley meant to sue. The "new" Defendants included various individuals (some named, and some "John Does"/"Jane Does") and Wexford Health Sources, Inc., the contractor for health care services at Vienna Correctional Center. Subsequent Orders resulted in the dismissal of several of the individual Defendants.

Remaining at this time are seven Defendants -- six individuals (Dr. Birch, Nurse Brown, Nurse Daymon, Nurse Stanford, Carol Fauless, and Penny George) plus Wexford Health Sources, Inc. (Wexford). On January 9, 2012, Wexford moved for summary judgment based on Conley's failure to exhaust administrative remedies prior to filing this suit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a). The parties filed memoranda of law supporting and opposing that motion.

On May 2, 2012, Magistrate Judge Stephen C. Williams conducted an evidentiary hearing (a "Pavey" hearing) on the issue of exhaustion. On July 31, 2012, Judge Williams submitted a thorough Report and Recommendation ("the Report"). The Report recommends that the undersigned District Judge deny Wexford's motion for summary judgment. Wexford filed objections to the Report on August 17, 2012. The deadline to respond to the objections has elapsed.

Timely objections having been filed, the District Judge undertakes de novo review of the portions of the Report to which Wexford specifically objected. **28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); Southern Dist. of Illinois Local Rule 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court adopts Judge Williams' Report. Analysis begins with reference to the applicable legal standards

B. <u>Analysis</u>

► <u>Overview of Exhaustion Requirement</u>

The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), requires prisoners to exhaust administrative remedies before they file suit in federal court. **42 U.S.C. 1997e(a).** The exhaustion requirement applies to all lawsuits challenging prison conditions under 42 U.S.C. 1983 and actions under any other federal law brought by a prisoner confined in any jail or correctional facility. ***See Porter v. Nussle, 534 U.S. 516, 532 (2002)(the PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").***

As the United States Court of Appeals for the Seventh Circuit summarized in *Pavey v. Conley,* **663 F.3d 899, 903 (7th Cir. 2011)**:

> A prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a)….; *Fletcher v. Menard Corr. Ctr.,* 623 F.3d 1171, 1173 (7th Cir. 2010). A remedy is not exhausted if the prisoner has failed to abide by

the procedures for pursuing relief. *Woodford v. Ngo,* 548 U.S. 81, 95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006);…. *Burrell v. Powers,* 431 F.3d 282, 285 (7th Cir. 2005). The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving.

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending.  **See *Perez v. Wisconsin Department of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002).**  If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit or dismiss any claims not fully exhausted.  **See *Jones v. Bock*, 549 U.S. 199, 223 (2007); *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).[1]**  Exhaustion-based dismissals are made without prejudice.  ***Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)("Dismissal for failure to exhaust is without prejudice…"), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004)("*all* dismissals under § 1997e(a) should be without prejudice").**

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." ***Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006).**  So here, Defendant Wexford bears the burden of demonstrating that Plaintiff Conley failed to exhaust all

---

[1]     Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation.  *See* FED. R. CIV. P. 12(d).

available administrative remedies before he filed this suit.  *Kaba*, **458 F.3d at 681,** *citing*

*Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).**

To properly exhaust within the meaning of the PLRA, the inmate must

"file complaints and appeals in the place, and at the time, the prison's administrative

rules require."  *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** As an inmate

confined in the IDOC, Conley was obligated to follow the regulations contained in the

IDOC's grievance procedures.   The IDOC's three-step administrative process for

resolving inmate grievances is delineated in **20 Illinois Administrative Code 504.800,** *et*

*seq.* **(West 2008).**

At *step one*, the inmate presents his complaint to a correctional counselor.

If that fails to resolve the problem, *step two* entails the inmate submitting a written

grievance on a designated form to the facility's Grievance Officer within a specific

period (usually the grievance must be filed within 60 days after the inmate discovers

the problem about which he complains).   After investigating, the Grievance Officer

forwards his conclusions to the Chief Administrative Officer (CAO).   The CAO's

decision is furnished to the inmate.  If the inmate still is unsatisfied, *step three* is an

appeal in writing to the Director of the IDOC.  The inmate submits the Grievance

Officer's report and the CAO's decision to the Administrative Review Board (ARB).

The ARB examines the documents, determines whether a hearing is needed, may

interview the inmate, and may call witnesses.  Ultimately, the ARB submits a written

report of its findings to the Director of the IDOC who makes the final decision on the

grievance.  Copies of the ARB's report and the Director's final decision are sent to the inmate.

►     <u>Application to Case at Bar</u>

As construed in the threshold review Order, Conley's complaint alleged, inter alia, the following key facts pertinent to the motion now before the Court. Another inmate at Vienna Correctional Center broke Conley's hand with a metal combination lock on December 22, 2009.  Conley's repeated attempts to get treatment for his hand were met with deliberate indifference.  Conley ultimately received an x-ray on January 15, 2010 (after being transferred from Vienna), and his hand was placed in a cast on January 26, 2010.   Wexford has a policy or practice that restricts the scheduling of inmate x-rays, which delayed Conley's treatment and prolonged his pain.  Conley filed this lawsuit on January 7, 2011.

The record before the Court establishes the following as to Conley's exhaustion of administrative remedies prior to filing this suit.  Conley filed four grievances relating to his medical treatment after the December 22, 2009 incident.

On <u>February 16, 2010</u>, he filed a one-page grievance, directly submitting it to the ARB, pursuant to 20 Ill. Admin. Code 504.870(a)(4) (*see* Report, Doc. 85, p. 3, n.1). The ARB returned that grievance with instructions to Conley to provide more specifics. Conley did so with a 9-page supplemental grievance on <u>June 17, 2010</u>, furnishing information (dates and specifics about the nurse and doctor he talked to, what they told him, how his appointments were canceled, and how he did not get an x-ray until 22 days after his hand was broken).  The ARB responded to this second/supplemental

grievance on June 25 2010, that it was "the opinion of this office that the issue was appropriately addressed by the institutional administration" (Doc. 49-1, p. 7). Defendant Wexford emphasizes that, despite all the details in the second grievance, Conley did not reference any *Wexford* policy or practice of sending prisoners only once per week for x-rays. "It is not until his Complaint that Plaintiff references such a policy or practice, which he alternately attributes to Wexford … and IDOC" (Objections to Report, Doc. 88, p. 3).

On June 27, 2010 and March 27, 2011, Conley filed his third and fourth grievances. Both of these related to his requests for a low bunk permit (he was having trouble accessing his upper bunk) and requests for pain relievers. One was processed at Big Muddy River Correctional Center, the other was processed at Sheridan Correctional Center. The ARB rejected these two grievances together, on the ground that Conley had not submitted them in the timeframe outlined by IDOC rules. These two grievances were appealed together by Conley in June 2011.

Defendants are correct that the third and fourth grievances do nothing to exhaust Conley's administrative remedies for the claims presented in this lawsuit. The June 2010 and March 2011 grievances simply do not relate to the allegedly denied or delayed medical care while Conley was at Vienna (they arise from events at other institutions). Even if they could be read to relate to the events at Vienna which form the basis of this lawsuit, the ARB properly denied these two grievances as untimely appealed. (The grievances were returned to Conley on April 8, 2011 and not appealed by Conley until June 2011, well past the 30-day deadline to appeal.)

So, the undersigned agrees with Defendants (and Judge Williams) that the June 27, 2010 grievance and March 27, 2011 grievances did not exhaust Conley's administrative remedies as a prerequisite to this lawsuit. But the inquiry does not end there.

The Court next examines the February 16, 2010 and June 17, 2010 grievances, both of which relate to Conley's medical treatment at Vienna Correctional Center after he broke his hand in December 2009. The February 16th grievance explained: "On the date I was assaulted by an inmate who hit me in the right hand with a combination lock that was in a laundry bag, after the altercation I requested medical assistance for my hand and never received it until I was sent to Big Muddy River CC.... I was also requesting X-rays for my hand and I never received that either until I went to Big Muddy River CC" (Doc. 49-1,p. 5). The ARB returned the grievance and directed Conley to provide the dates he was injured and the dates he requested medical attention.

As described above, the IDOC grievance procedures require an inmate to include in a grievance what happened, where it happened, *when* it happened, and who was involved. **20 Ill. Admin. Code 504.810(b).** Conley's February 16th grievance fell short, but Conley provided the requested information in the June 17, 2010 supplemental grievance, thereby satisfying the requirements of the IDOC grievance procedure. Conley provided enough information in the June 17th grievance – a 9-page form which delineated the treatment delays, specifically mentioned Dr. Birch, explained that the nurse called Dr. Birch because the hand injury was so serious, described in detail the

nurse's statements (made to Conley after talking to Dr. Birch) regarding when Conley could expect to see a doctor and get referred for an x-ray, and provided the dates on which Conley saw the nurse (December 24th) and finally saw a physician (January 6th). The June 17th grievance specifically noted that the nurse told Conley that examination by the doctor and any x-ray would have to wait, and there was nothing the nurse could do "because of the holidays." Additionally this grievance also made clear that when Conley ultimately did get to see Dr. Kim Birch on January 6th, he was told that the x-ray could not be taken until January 13th -- 22 days after Conley sustained the injury.

Wexford objects that Conley's June 2010 grievance, while plenty detailed, blamed all sorts of people for his delayed medical treatment (including the Wing Officer at Vienna, various nurses, and Dr. Birch's holiday schedule), did not mention *Wexford*, and did not identify any policy or practice of Wexford's regarding the scheduling of x-rays. This objection is unavailing.

The PLRA's exhaustion requirement was designed to afford correctional officials a chance to address inmate complaints internally, prior to resort to federal litigation. *See, e.g., Kaba,* **458 F.3d at 684**, *citing Woodford v. Ngo,* **548 U.S. 81, 93 (2006).** The purpose of a grievance is to provide prison officials a "fair opportunity" to address an inmate's complaint. *Maddox v. Love,* **655 F.3d 709, 713 (7th Cir. 2011).** Indeed, the Seventh Circuit has consistently reminded district courts that "all that the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder,* **422 F.3d 570, 580 (7th Cir. 2005),** *citing*

*Strong v. David*, **297 F.3d 646, 650 (7th Cir. 2002),** and afford prison officials an opportunity to respond, *see Pavey v. Conley*, **663 F.3d at 905-06**.

Joseph Conley's June 17, 2012 grievance supplied the required "fair opportunity" to address Conley's complaints.  This detailed grievance alerted prison administrators to the alleged problem with scheduling medical treatment and procedures at Vienna and permitted prison administrators (who knew that Wexford was the healthcare contractor for the prison) to examine whether Wexford's policies or practices had caused a delay in Conley's treatment.  Conley was not required to identify specific Wexford policies or grieve specific Wexford practices.  As Magistrate Judge Williams stated:  "Holding otherwise would be an odd result:   a corporate defendant (who presumably works with the prison officials in charge of reviewing grievances) could avoid liability because a prisoner (whose interaction with the prisoner health system is limited to doctors and nurses, whom he may not even know work on a contract basis) would be required to grieve corporate policies…. Conley gave the ARB enough information to examine Wexford's policies as they pertained to the scheduling of his X-rays" (Doc. 85, p. 10).  Simply put, Conley's grievance served its purpose of providing prison officials a reasonable opportunity to address his complaints.   *See Maddox*, **655 F.3d at 713.**

Wexford also objects that because Conley did not meet his burden of offering evidence to refute Wexford's summary judgment motion (Doc. 88, p. 3), the Court *must* grant Wexford's motion.  This argument, too, misses the mark.   Summary judgment is appropriate only when the pleadings and submissions in the record

indicate that there are no genuine issues of material fact, *and* the moving party is entitled to judgment as a matter of law.  FED. RULE CIV. P. 56(a).  Here, Wexford has not demonstrated that it is entitled to judgment as a matter of law.[2]

### C.    CONCLUSION

The undersigned District Judge concludes, as did Magistrate Judge Williams, that (via the June 17, 2010 grievance) Conley sufficiently exhausted administrative remedies prior to bringing this suit.  Accordingly, the Court **ADOPTS** in its entirety Judge Williams' Report and Recommendation (Doc. 85) and **DENIES** Defendant Wexford's summary judgment motion (Doc. 48).

IT IS SO ORDERED.

DATED September 19, 2012.

s/Michael J. Reagan
Michael J. Reagan
United States District Judge

---

[2]      In reciting the standard governing summary judgment motions, Wexford also omitted the principle that the party opposing summary judgment is entitled to the benefit of all reasonable inferences in his favor that are supported by the record.  *U.S. ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 823 (7th Cir. 2011).  *Accord Marion v. City of Corydon, Ind.*, 559 F.3d 700, 704 (7th Cir. 2009)(the district court is "obligated to construe all facts and reasonable inferences" in favor of the non-movant for summary judgment); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 533 (7th Cir. 2011)(even when the opposing party does not dispute the movant's facts, the district court is still obligated to review those facts in the light most favorable to the nonmovant).